PARIENTE, J.,
specially concurring.
I write separately to stress the fact that although the amount in dispute in this case is comparatively small for a fee dispute issue, this case illustrates several problems with the statutory scheme for registry counsel handling postconviction cases.[6]
First, it highlights the fact that the investigatory fee schedule set forth in section 27.711(5), Florida Statutes (2011), has not been increased since it was first introduced over fourteen years ago. While the Legislature took a necessary step by enacting a fee schedule in section 27.711 that more fully ensures the constitutional right to effective representation of counsel in capital eases, it may now be an appropriate time for the Legislature to review the statutory schedule for fees and expenses paid to registry counsel handling death penalty cases. If the Legislature provides for a set fee schedule but does not revisit this schedule for decades, this increases the risk that the statutory framework set up by the Legislature will become “so out of line with reality that [it] materially impair[s] the abilities of officers of the courts to fulfill their roles of defending the indigent.’ ” White v. Bd. of Cnty. Comm’rs of Pinellas Cnty., 587 So.2d 1876, 1378 (Fla.1989) (quoting White v. Bd. of Cnty. Comm’rs of Pinellas Cnty., 524 So.2d 428, 431 (Fla. 2d DCA 1988) (Lehan, J., dissenting)).
In death penalty cases, the consequences of underfunding the defense are clearly significant. While the Legislature should be commended for establishing a system designed to ensure that all death penalty defendants have assigned postcon-viction counsel paid for by the State, the Legislature should also periodically review such fee structures to ensure that the statutory fee limitations are realistic and permit attorneys to hire qualified investigators who can perform a comprehensive investigation.
Second, the circumstances of this case exemplify the problems that flowed from the Legislature’s elimination of one of the capital collateral regional offices, Capital Collateral Regional Counsel-North (CCRC-North), and the redistribution of the cases assigned to that office. After CCRC-North could no longer represent Moore, Martin McClain, a private attorney, was appointed and undertook a significant amount of work in order to be familiar with all of the necessary facts of the case so that he could fully represent the defendant. McClain is well-known to this Court as an attorney who explores all ave *901 nues for his clients and has succeeded on occasion in discovering evidence that has led to exoneration, a new trial, or at the very least to raising questions as to a defendant’s guilt.
Upon being retained, McClain determined that it was necessary to hire an investigator, who likewise was required to review the record completely so he could find witnesses to support the relevant claims. The elimination of CCRC-North means that capital defendants in this region do not have a full-time investigator, but are required to retain investigators on an hourly basis. When an investigator must take time at the outset to become familiar with the case, this reduces the remaining available fees for investigating the claims at issue. Thus, defense counsel must ensure that the investigator carefully limits time spent to uncover potentially meritorious claims in order to keep fees within specified limits. Clearly, in order to promote the fair and impartial administration of justice, defense counsel must be able to follow credible leads that might cast doubt on the guilt of the defendant.
Lastly, I would be remiss if I did not point out that part of the reason the expenses exceeded the cap in this case was because of the delay in holding an eviden-tiary hearing. While the reasons for that delay do not appear in this record, this Court has been vigilant in ensuring that all postconviction cases are timely processed and a delay of years — or even months — is contrary to the interests of justice.
I therefore urge the Legislature to consider whether the statutory fees need to be increased. Moreover, I recognize that the Legislature is currently considering whether to re-establish CCRC-North and believe that this case supports the notion that the elimination of CCRC-North and redistribution of its cases may not have served the benefits that the Legislature was hoping to achieve.
LABARGA and PERRY, JJ., concur.

. Last year, the Legislature also eliminated the statutorily created Commission on Capital Cases that served as an oversight commission for postconviction cases handled by registry counsel. See ch.2011-131, § 1, Laws of Fla.